# Law *against* Patterson.

An entry upon the whole of the land by one tenant-in-common, who takes possession, as if it had been his own exclusively, and receives the rents, issues, and profits thereof, without accounting to his co-tenant for any part thereof, or proof of any demand upon him to do so, for twenty-one years, amounts to an actual ouster, and will bar the other tenant-in-common of his right.

An adverse holding by one tenant-in-common, for any length of time, however short, previously to the institution of an action of partition, will bar a recovery in such form of action.

**ERROR** to the Common Pleas of *Juniata* county.

This was an action of partition by William H. Patterson, Robert Patterson, Andrew Patterson, and John Patterson, devisees of John Patterson, deceased, against Benjamin Law, in which the plaintiffs claimed to recover equal partition between them and the defendant of a tract of land in Milford township, and of a house and lot in the borough of Mifflin town.

The whole case, and all the points raised in it, are fully stated in the opinion of the court.

*Benedict* and *Blanchard*, for plaintiff in error, argued that if

one co-tenant take possession of the land, as if it were his own, and received the rents, issues, and profits, made improvements, paid taxes, without any accountability or demand upon him to account for twenty-one years, it raised a legal presumption of ouster, which would protect him in his possession, and cited 10 *Serg. & Rawle* 187; 9 *Watts* 363; *Cowp.* 217; 3 *Watts* 74; 7 *Watts* 35; 5 *Watts* 49, 185.

*Parker* and *Reed*, for defendants in error, on the same point, cited 10 *Watts* 289; 3 *Watts* 167; 3 *Watts* 76; 2 *Penn. Rep.* 183; 10 *Watts* 189.

The opinion of the Court was delivered by

KENNEDY, J.—The first error is a bill of exception to the opinion of the court, rejecting certain evidence offered by the plaintiff in error, who was the defendant below. The object of the evidence was to prove that in the year 1814, a dissolution of the partnership, which had previously existed between John Patterson, the devisor of the plaintiffs below, and Benjamin Law, the defendant, was advertised by them by means of hand-bills in writing, put up at various places, stating the fact. The witness, however, could only testify that he saw a hand-bill in writing, of that import, put up at a particular place, but by whom written or put up he did not know. This was certainly not evidence to show that it was done by Patterson and Law, or by their direction, or by Patterson or his order, and therefore could not be given in evidence, for the purpose of affecting the rights of those claiming under him. The court was therefore right in rejecting the evidence.

The remaining errors, with the exception of the last, relate to answers given by the court to certain points submitted by the counsel respectively of the parties. But before proceeding to notice the answers of the court thus excepted to, it may be proper to observe that this is an action of partition; and to state first the facts and the evidence involved in the points, the answers to which have been assigned for error. Partition is claimed by the plaintiffs, as the devisees of John Patterson deceased, of two parcels of property, mentioned in the declaration. The first is a house and lot of ground, situate in the town of Mifflin; and the second, a farm or tract of land situate in the vicinity of the town. The defendant below pleaded *non tenent insimul;* and that he was sole seised, and had been so for more than twenty-one years. Issue was taken on both of these pleas; though it must be remarked, that the second was very anomalous, and altogether inapplicable to the action; for the jury might have found in favour of the plaintiffs below on it, and yet the plaintiffs and the defendant, notwithstanding such finding, might not have been holding together the property described in the declaration, at the time of

commencing the suit, without which it is plain the plaintiffs could not sustain this action.    The plaintiffs below, therefore, might have demurred to it.    The first plea, however, went to the merits of the action, upon which the jury found also for the plaintiffs; so that if the verdict and judgment of the court below be free from error, so far as regards the trial of this issue, the judgment is good, and therefore ought to be affirmed.

From the evidence it appeared that John Patterson, the devisor of the plaintiffs below, and Benjamin Law, the defendant, on the 15th of February 1808, became the owners in fee of the house and lot mentioned in the declaration, by a deed of conveyance of that date, from Ezra Doty, who held the same in fee, for the consideration of 250*l*.; and that afterwards, on the 7th of April 1815, they became invested with the title in fee-simple to the tract of land, described in the declaration as containing 200 acres and 56 perches, by a deed of conveyance, bearing the same date, from Alexander Sanderson, for the consideration of 4000*l*.  Although a receipt for the payment of this sum of money, by Patterson and Law to Sanderson, was subjoined to the deed of conveyance, yet, in point of fact, it was only paid in part at that time, and bonds given by them to Sanderson for the payment of the residue.    It also appeared that all the money which was paid at any time for this land, was paid by Law.    In the deed of conveyance, Patterson and Law are described as " trading under the firm of Patterson & Law;" and it was shown, that some years anterior to their purchase of the house and lot, and from that time, down as late as the year 1814, at least, if not 1819, they kept a store of goods, wares and merchandise, in partnership, in the town of Mifflin, where Law resided and transacted all the business of the store.    Patterson, during the same time, resided at a place some few miles distant, where he kept a store of his own, and attended to the management of it in person; but was ever in the practice of visiting the partnership store at short intervals. The partnership in the store would seem to have ended in 1819, if not before; for after that, the business of it was done by Law in his own name, and not in the name of Patterson & Law, as theretofore.    And although Patterson lived afterwards until October 1836, yet it did not appear from the partnership books of the store, or otherwise, clearly, that a final settlement had been made between him and Law of their partnership concerns.    The most that was shown in relation to this, was by the evidence of John Horner, who testified, that in 1835, Mr Law came to the house of Mr Patterson, brought with him a trunk full of books of account, and his son David; that he and Mr Patterson, the latter being assisted by his son John, were employed with the books five or six days.    The witness was not in the room with the parties while they were engaged with the books.    He, however, saw the books and them in the room during the different days, but did not

know any thing that was said or done, except that they appeared to be engaged with the books, as if making a settlement, but he rather thought that they did not complete it. The books were left at Patterson's by Law, and were not removed until they were wanted for the trial of a cause, which would seem to have taken place after the death of Mr Patterson. It was a suit upon a recognizance, which was a lien upon the land at the time it was conveyed by Sanderson to Patterson and Law, and a recovery was had in it, which compelled Law to pay, on the 6th of March 1839, $768.81, in order to have the land discharged of the lien. Upon the conveyance of the house and lot being made to Patterson and Law, if not before, Law took the possession of it. The partnership store, as long as it was continued, was kept in it, and the residue thereof, occupied by Mr Law and his family as their dwelling-house. At the time of trial it had been occupied apparently by Law as his own, according to the evidence, thirty or upwards of thirty years. The tract of land was taken possession of by Law, immediately upon its being conveyed by Sanderson to him and Patterson, and leased by Law in his own name exclusively, without any mention whatever of the name of Patterson being made, to different tenants at various times, from the time of the conveyance down to the time of the trial of this action, which was in 1839; it having been commenced in the preceding year. In 1815, the same year of the conveyance, after it was made, Law erected a dwelling-house upon the land, in which his tenants afterwards lived. He also had post and rail fences, as also worm-fences, put up on it, and sheds around the barn. From the year after the conveyance, it was uniformly assessed with taxes in his name, and he paid all the taxes so assessed, excepting the road taxes, which were paid by his tenants. He received from the tenants all the rents as they fell due, without accounting to Patterson for any portion thereof, or any demand being made upon him by Patterson to do so. Patterson, although he lived twenty-one years and upwards in the neighbourhood of the land, after the conveyance of it to him and Law, and passed through it in going from his residence to the town of Mifflin, and returning thence, which was, at times, a weekly if not a daily occurrence, and in thus passing frequently met with the tenants on the land, yet never said a word to them about it. Indeed it would appear as if he never looked at it in the manner that it might well be supposed he would have done, if he had considered himself interested in it as an owner, or part owner. Neither did it appear that any statement was made or kept by Law in the partnership books of account belonging to the store, or elsewhere, of his expenditure on the land, or of his receipt of the rents, issues and profits arising therefrom. There was also reason to conclude that Patterson could not be ignorant of what was contained in the books, and the manner in which the accounts were

kept, so far as he was interested in them, for he was very often at the store with Law, and frequently stayed with him over night; and that they were always on the most friendly terms with each other.   To countervail all this, however, the plaintiffs below relied on the testimony, first, of a William M'Kee, who stated that in 1819, from May to July in that year, when he was acting as constable, some precepts were put into his hands to be executed; some in favour of B. Law, and others in favour of Patterson and Law; that being curious to know the reason of the difference in this respect, he asked Mr. Law for it, who told him in reply, that the store was then his own, but the plantation across the river belonged to him and Patterson.   And secondly, of Owen Carr, who stated that in 1826, Law, at his store, told the witness that he supposed he could have carried on his back what he (Law) began with in partnership with Patterson in store and lands; that from what Law thus said, witness thought that Patterson and Law were in partnership as to land, but could not say that Law said they had lands at the beginning.   Several witnesses, however, were called and testified that Carr's general character for truth was not good, that it was so bad that they would not believe him on his oath.

Having thus stated the facts and purport of the evidence connected with the points, the answers to which are assigned for error, I will now proceed to the consideration of them.   The second error is an exception to the answers given by the court to the fourth and fifth points of the plaintiffs below.   The plaintiffs below, by their fourth point, requested the court to charge the jury, that " The leasing of the property by Law, making repairs, receiving the rents and profits, paying the taxes, paying the purchase money, if no division of the partnership property in the store has ever been made, nor any partnership accounts settled between Patterson and Law, are not facts inconsistent with the presumption of a joint possession; and though continued from 1815 until this suit was brought, will not prove an ouster of Patterson."   The fifth point contained a request to instruct the jury that " Although there was an agreement between the parties to dissolve the partnership in 1814, and the fact of dissolution was publicly advertised, yet if the partnership property in the store remained in the hands of Law, and the business was conducted by him, and no actual division of the goods or funds ever took place, and no settlement of the partnership accounts ever was made between the parties, such agreement and advertisement of the dissolution would not, in law, raise a presumption that Law had ousted Patterson from the land, and held the same adversely to his right."   The court answered each of these points in the affirmative to the jury.   There is certainly very little, if anything, in the latter of these two points that seems to have any bearing upon the cause; it is unnecessary, therefore, to dwell upon it.   But

[Law v. Patterson.]

the first will be considered in connexion with the third error, which is an exception to the opinion of the court on the second point of the defendant below. By this point the counsel of the defendant requested the court to instruct the jury, " If they believed that the defendant, Law, entered on the whole tract of land in dispute, rented it as his own, took the profits of the whole, paid the taxes, and claimed and held the whole, exclusively, for more than twenty-one years previously to the bringing of this action, the jury might and ought to presume an actual ouster, though none were positively proved, and the plaintiffs therefore could not recover." The court in reply to this told the jury, " If the facts stated in this point were true, so far as applicable to this case, the law is as therein stated; but the court knew of no evidence tending to show that Law claimed the profits as his own for more than twenty-one years :" and then superadded, " this however is for you, not us." It would appear that a notion prevailed at one time, that although one tenant in common took the whole profits, this did not devest the possession of his companion; that to effect this, there must be an act of the one going directly to exclude the other from participating in the profits of the land, such as driving his cattle off it, or preventing him from entering upon and occupying it. 1 *Inst.* 199 b. *Hemsley* v. *Price*, (*Cro. Eliz.* 641;) that the entry of one tenant-in-common, though it might be in one of three different ways, either in the name of himself or his fellow, or generally, without saying any thing of his claim in taking possession, or claiming all expressly, was not sufficient to dispossess his fellow, for his possession was lawful over all at all times, so that there was no possession altered by such claim. *Smales* v. *Dale*, (*Hob.* 120.) Hence the inference was that a sole claim could never change the possession; from which it followed that a tenant-in-common could never, as it was thought, be disseised by his fellow, but by an *actual* ouster. 2 *Cruise Dig.* tit. 20. *Tenancy in Com.*, sec. 14, 15. *Reading's Case*, (1 *Salk.* 392) *Reading* v. *Royston*, (1 *Salk.* 242.) In the case of *Fairclaim* v. *Shackleton*, (5 *Burr.* 2604) where one tenant-in-common received all the rents for twenty-six years, it was made a question, in an action of ejectment brought by the other tenant against him for the recovery of his moiety, whether this possession of twenty-six years amounted to an expulsion of the plaintiff, so as to devest him of his estate. And there it was also said that tenants-in-common, as well as joint-tenants and co-partners, have a joint possession, and the possession of one is the possession of both; that the perception of the profits did not amount to an expulsion; though one tenant-in-common might disseise another, yet it must be done by an actual disseisin, and not by a bare perception of the profits only. But it may be observed, in regard to this case, as Mr Justice Ashhurst said in *Fishar* v. *Prosser*, (*Cowp.* 220) that the question, whether the jury might not have presumed an

[Law v. Patterson.]

*actual ouster* from the twenty-six years' uninterrupted possession of the estate by the defendant, and acquiescence therein by the lessors of the plaintiff, was not properly before the court. The only question was, whether the plaintiff was barred by the statute of limitations. It was not left to the jury to presume either an adverse possession or an *actual ouster*. That fact, therefore, was not found; and as it belonged to the jury alone to presume facts, the court therefore could not well decide otherwise than as they did. But in *Fishar* v. *Prosser*, which was tried before Lord Mansfield, it was determined that thirty-six years' sole and uninterrupted possession by one tenant in common, without any account or demand made, or claim set up by his companion, was a sufficient ground for a jury to presume an *actual ouster* of the co-tenant. It was not necessary, the court said, to constitute an *actual ouster* that it should be accompanied by real force. For a man might come in by a rightful possession, and yet hold over adversely without title. If he does so, such holding over, under circumstances, will be equivalent to an *actual ouster*. So it was said in *Royer* v. *Benlow*, (10 *Serg. & Rawle* 306), the owner of land may confess himself out of possession, and if he does so, the statute of limitations will begin to run against him; or without actual confession, a man may show by his conduct that he considers himself out of possession : as if one claiming by warrant and survey, omit to pay any part of the taxes assessed upon it for twenty-one years, and suffers one who has entered without title and settled on the land, to pay them during that whole period, the jury may presume that he was ousted, and he will be barred by the act of limitations. It is true, however, that Lord Mansfield in *Fishar* v. *Prosser*, *(Cowp.* 218) did say a *refusal* by the defendant to pay to the plaintiff, his companion, his share of the profits of the land, is of *itself* not sufficient to constitute an ouster, *without denying* his title. But if, upon demand by the co-tenant of his moiety, the other *denies to pay*, and *denies his title*, saying he claims the whole and will not pay, and continues in possession, such possession is adverse and *ouster* enough. But then in stating the case on page 219, he shows that there was no *express* denial, at any time, in that case, of the plaintiff's title by the defendant, or refusal to pay him his proportion of the rents and profits ; and, in fact, nothing appeared except that the defendant had had the sole uninterrupted possession of the estate for thirty-six years, without any evidence tending to prove an account demanded, or payment of the rents and profits, or claim by the lessors of the plaintiff, or of an acknowledgment made at any time by the defendant of title in the lessors of the plaintiff, or in those under whom they claimed. And his Lordship concludes, " Therefore I am clearly of opinion, as I was at the trial, that an undisturbed and quiet possession for such a length of time is a sufficient ground for the jury to presume an *actual ouster*, and that they did right

in so doing." Thus it would appear that the strict and literal notion formerly entertained in regard to what was necessary to constitute an *actual ouster*, has given way to the more refined sense of mankind on the subject; and now " an undisturbed and quiet possession for a certain length of time is a sufficient ground for the jury to presume an *actual ouster.*" This doctrine is laid down most clearly and distinctly in the case of *Frederick* v. *Gray*, (10 *Serg. & Rawle* 188) and the duration of such possession is there expressly limited to twenty-one years. The late Chief Justice uses the following language: " when one tenant-in-common enters on the whole, and takes the profits of the whole, and *claims the whole exclusively* for twenty-one years, the jury *ought to presume* an *actual ouster*, though none be proved."

In order to prove that one tenant-in-common has *claimed the whole exclusively*, it is not requisite that he should be proved to have made an express declaration to that effect; for it may be shown as clearly from his acts as from his words. For this purpose it will be sufficient to show that he entered upon the whole of the land, and took the possession thereof, as if it had been his own exclusively; and that he has continued to occupy the whole, either by himself or his tenants, and to receive the whole of the rents, issues and profits arising from the same, for twenty-one years, without having accounted to his co-tenant for any portion thereof, or any demand being shown to have been made upon him to do so, or evidence given of his having acknowledged the claim of his co-tenant. So a sale of the whole, by one tenant in common of a tract of land, and possession taken by the purchaser and held under it for twenty-one years, amounts to an *actual ouster*, and will bar the other tenant-in-common of his right therein. *Culler* v. *Motzer*, (13 *Serg. & Rawle* 356.) The sale in such case of the whole tract, is in effect such an assertion of claim to the whole as cannot be mistaken, because it is wholly incompatible with an admission that the other tenant-in-common has any right whatever. Now, although Law, the plaintiff in error, in the case under consideration, did not sell and dispose of the land altogether, yet he took possession of the whole of it immediately after his right first accrued, and in effect asserted his claim to the whole of it by leasing the whole thereof in his own name to a tenant for a term first of seven years, reserving the rent payable to himself alone, and after the expiration of that term, in like manner again leasing it for a second term of seven years; and after the expiration of this second term, continuing to lease it in like manner for terms of a less number of years, for a period in all of nearly twenty-three years; during the whole of which period he was permitted to receive all the rents, issues and profits of the land, without any claim being made upon him by Patterson or the plaintiffs below for any portion of the same. And besides these acts of ownership, he put up a dwelling-house, and made other valuable improvements upon

the land, without ever naming Mr Patterson as having any interest in the same. He likewise, as may be fairly inferred from the assessment of taxes on account of the land, returned it to the assessors as his own land exclusively, for since the year 1815 it has been uniformly assessed in his name as being the owner thereof. These things were all done, as it were, under the eye of Mr Patterson, without any objection or assertion of right on his part. But what seems to make this case still much stronger in favour of Mr Law than any of the cases noticed above, is the circumstance of the whole of the purchase money of the land having been paid by him alone, which would seem to indicate something like an agreement between him and Patterson that he was to pay for it and be the sole owner of it. At all events, his having paid the whole of the purchase money that has been paid for the land, gives him a powerful claim to it in equity, independent of the statute of limitations. It is said, however, that the purchase money, though paid by the hands of Mr Law, was paid by him out of the partnership funds belonging to the store. But of this there is not a tittle of evidence. The partnership books show nothing of it; and if the fact were so, it ought to appear there. Besides, if the land was thus paid for, and be in reality a part of the partnership property, more ought to appear on the partnership books. The amount of all the expenditures in improving the land ought to be found charged in them, and the amount of all the rents, issues and profits received from it credited. Nothing of the kind, however, is to be found in them. It is also reasonable to suppose that Mr Patterson was not only well acquainted with the manner in which the books were kept, but likewise with the contents of them, as he was very frequently at the store, where they were kept, and often there over night with Mr Law; so that, if the land had been held as a portion of the partnership property, he would have had the moneys paid out on account of it, and whatever was received from it, entered on the books, or otherwise he would have spoken of it in a manner that would have made it known, and could have been proven, instead of being perfectly silent. The conduct, therefore, of Mr Patterson himself, as well as that of Mr Law, goes to show that Mr Patterson had no real interest, as an owner, in the land. Under this view of the case, we think that the court below erred in answering the fourth point, submitted by the plaintiffs below, in the affirmative; and in telling the jury, in their answer to the defendant's second point, that they knew of no evidence tending to show that Law claimed the property as his own for more than twenty-one years.

The fourth error is an exception to the answer given by the court to the defendant's third point. The court was requested by this point to instruct the jury, " if they believed that Law, the defendant, either by himself or his tenants, was in the uninterrupted possession of the land for more than twenty-one years pre-

[Law v. Patterson.]

viously to the bringing of this suit, and received the profits without accounting to John Patterson, or those claiming under him, for any part thereof, and without any demand made by him on them, the jury may presume an actual ouster, and the plaintiffs cannot recover." To this the court answered, "In order to defeat the recovery of the plaintiffs in this suit, there must have been an adverse holding against the plaintiffs for twenty-one years; and the facts indicated by the defendant's. point alone, if you believe them, would not in themselves constitute an *actual ouster*, and defeat the plaintiffs' recovery in the present case." In this answer of the court there is manifest error. First, in saying that to defeat the recovery of the plaintiffs in this suit, there must have been an *adverse holding* against the plaintiffs for *twenty-one years*. Now, it is clear that an adverse holding of the property by the defendant, for twenty-one days before the bringing of the action, would be as effectual to defeat the plaintiffs in this action, as an adverse holding for twenty-one years would be. The right of the plaintiffs below to recover, turned entirely upon the point of their holding together with the defendant at the time the action was commenced, and not upon their unity of possession or having held together for any previous length of time. The language of the declaration and the plea, which forms the general issue in this action, indicates the truth of this proposition. The plaintiffs, in their declaration, allege that they and the defendant *hold together an undivided*, &c.; and the defendant alleges in his plea that they do *not hold together;* thus denying the allegation of the plaintiffs, and making up the issue upon that point. Secondly, the court erred also in the latter part of their answer, by telling the jury that "the facts indicated by the defendant's point alone, under the facts in evidence in this case, if they believed them, would not in themselves constitute an *actual ouster*, and defeat the plaintiffs' recovery in the present case." This part of the answer is erroneous, in the first place, because it does not meet fully and fairly the defendant's point. The defendant did not by his point request the court to instruct the jury that the facts, of themselves, as stated therein, if found by the jury to be true, would constitute an *actual ouster*, but merely that the jury might therefrom presume an actual ouster; or, in other words, that they were evidence from which they might find that an *actual ouster* had been committed. In the next place, we also think this part of the answer erroneous, because it did not answer the point affirmatively. For, if the jury believed that Law, the defendant, either by himself or his tenants, was in the sole and uninterrupted possession of the land, for more than twenty-one years previously to the bringing of this suit, and that he received the rents and profits, without accounting to Patterson, or those claiming under him, for any part thereof, and without any demand having been made by

I. — 25　　　　　R

[Law v. Patterson.]

them upon him to do so, the jury might very fairly have presumed or inferred therefrom an *actual ouster*.

The fifth error is an exception to the answer of the court given to the defendant's fourth point. This answer has been shown to be erroneous in what has been said above on the court's answer to the defendant's second point. The court answered this fourth point, as a general proposition, in the affirmative; but said, as they had done before, that they knew of no evidence in the cause that tended to show that Law claimed the property for twenty-one years in his own right. The court were certainly mistaken as to what would be evidence of such claim by the defendant. We think there was not a little, but a great abundance of it; which it is unnecessary to repeat here, after having stated it explicitly above.

The sixth error is an exception to the answer given by the court to the seventh point of the defendant below. This point has reference to the testimony of Owen Carr and William M'Kee, which is stated above, and its effect upon the cause in case it should be credited by the jury. From the worthless character given of Carr, it is not probable that any intelligent jury will give credence to his narrative. And, although M'Kee's general character is unimpeached, yet his story has the air of great improbability in it; for he says that Law's declaration was made in answer to a question which he (the witness) asked him, but it is obvious that it is really no answer to such question as he says he asked. It would therefore be extremely dangerous to suffer such evidence to overturn and set aside, as it were, the facts evidenced by the conduct of the parties throughout a period of twenty-three years. It must, however, be understood, as the defendant relies upon the presumption which the jury ought to draw in his favour from the facts and circumstances proved by him, that such presumption is susceptible of being repelled by satisfactory proof of rebutting or countervailing circumstances.

Judgment reversed, and a *venire facias de novo* awarded.