Alexander v. Kennedy.

LORIN C. ALEXANDER v. THOMAS KENNEDY AND WIFE.

That the possession of one co-heir or co-tenant, is the possession of the other co-heirs, and is taken in trust for their benefit, is an elementary and indisputable principle of law.

But this possession may become adverse to the other heirs, by acts or declarations repelling the presumption that the possession is in the character of a co-heir, and which show clearly a claim of exclusive right; the hostile intent of the possession must be manifested by acts of a more unequivocal character than would be necessary in ordinary cases, where there is no privity of estate between the claimants to the property; acts of ownership in such cases, are not necessarily acts of adverse possession.

Where the surviving husband, who was entitled by the law of descents, to the one-half of the slaves of his deceased wife, who had died without children, left all the slaves in possession of his wife's parents, who paid taxes upon them and claimed them as their own for nearly four years, in a suit by the husband to recover one-half the slaves, it was held that the evidence was not sufficient to sustain a verdict for the defendants on the plea of adverse possession for two years; on the ground of the privity of the estate and of the special confidence between the claimants.

Error from Lamar. Tried below before the Hon. William S. Todd.

Suit by plaintiff in error against defendants in error, commenced March 14th, 1855. The petition alleged the marriage of the plaintiff to a daughter of defendants, in March, 1849, in this State; a gift of six slaves, " a short time after" the marriage, by the defendants to plaintiff's wife; the possession of the slaves by plaintiff up to the period of his wife's death; that, sometime in the year 1853, plaintiff's wife became seriously ill, and plaintiff removed with her and the slaves to the residence of defendants, where they continued to reside until the death of plaintiff's wife, on the —— day of —— of the same year; that the plaintiff, overcome with grief at the death of his wife, left the residence of the defendants, and also abandoned his former residence, and for some years thereafter re

sided and did business at Fort Belknap upon the frontier; that he left the slaves in charge of defendants, who have continued to possess them to this day; that plaintiff's wife died intestate, leaving no children; that plaintiff is entitled by the laws of descent to one-half of said slaves; that, on the —— day of January, 1855, plaintiff demanded partition of said slaves, of the said defendants; that defendants refused, and now claim the whole of said slaves; prayer, &c.

Answer of general denial, and plea of adverse possession for two years.

Statement of facts, as follows:

In this case it is agreed that the defendants delivered into the possession of their daughter, Mrs. Alexander, the negroes sued for; that they are now worth the sum of thirty-five hundred dollars. It is also agreed, that the negroes were taken by Mrs. Alexander to her home in Fannin county; and that, after remaining there with her and her husband for about two years, owing to Mrs. Alexander's health, she and her husband returned with the negroes to defendants, where Mrs. Alexander died in June, 1851, without children. Mr. Alexander left the property in the possession of defendants, and they have paid taxes upon them ever since claiming them as their own.

The Court charged the jury, without request, as follows: If the jury believe from the testimony, that the negroes in question were, at the time of the death of Mrs. Alexander, her property, by our law of distribution, her husband, the plaintiff, would have one-half, and her father and mother, the defendants in this case, would have the other half; and if after her death, they remained in the possession of the defendants, coupled with an admission on their part of the interest of the plaintiff, the Statute of Limitations would not begin to run until after a demand and refusal to deliver; but if the jury believe that they had possession for more than two years previous to the institution of this suit, claiming the title, and exercising public and notorious acts of ownership over them, their

title is complete ; and the jury must find for the defendants.

The plaintiff requested the Court to charge the jury as follows : That, if they believe from the testimony, that defendants delivered the negroes into the possession of Mrs. Alexander, and that they were taken by her to her home and remained in her possession up to the time of her death, that this raises a presumption of gift on the part of her parents.

Also, that if the jury find that the negroes were given to Mrs. Alexander ;. that, upon her death without issue, her parents inherited the one-half of her estate, and the plaintiff, as surviving husband, the other.

That, until a partition or division had been made, either of the heirs were entitled to the possession of the whole property, and though defendants set up an adverse possession of two years, it is not such possession as contemplated by the Statute ; inasmuch as the same is not inconsistent with the possession of plaintiff; that a possession, to be adverse, must be inconsistent with the claim of plaintiff, and the mere giving in and paying of taxes by one joint owner, is not inconsistent.

The first and second propositions of the charge asked, were given ; the third was refused.

Verdict and judgment for defendants. Motion for new trial overruled, &c.

*Mills*, for appellant.

*J. A. T. Murray*, for appellees, cited Humbert v. Trinity Church, 24 Wend. R. 587 ; Portis v. Hill, 3 Tex. R. 273; Charle v. Saffold, 13 Id. 94 ; Cochran v. Winburn, 9 Id. 123 ; Wingate v. Wingate, I1 Id. 430. The question of adverse possession was purely a question of fact, and was fairly submitted by the charge of the Court.

HEMPHILL, CH. J. This suit was brought March 14th, 1855, for the partition of certain slaves, who had been delivered by

the defendants, Kennedy and wife, to their daughter after her intermarriage with Alexander, the plaintiff.   The statement of facts, after reciting the delivery of the slaves as above, and their value, continues to the effect that the negroes were taken by Mrs. Alexander to her home, and after remaining there with her and her husband about two years, owing to Mrs. Alexander's health, she and her husband returned with the negroes to defendants, where Mrs. Alexander died in June, 1851, without children.   Mr. Alexander left the property in possession of defendants, and they have paid taxes on them ever since claiming them as their own.

The defendants pleaded the Statute of Limitations.

The Court charged, in effect, that if the slaves remained in possession of defendants after the death of their daughter, with the admission on their part of the interest of the plaintiff, the Statute of Limitations would not begin to run until after a demand and refusal to deliver ; but if the jury believe that they had possession for more than two years previous to the institution of this suit, claiming the title and exercising public and notorious acts of ownership over them, their title is complete, and the jury must find for defendants.

The jury found for defendants, and the plaintiff has brought up the cause by writ of error.

Mrs. Alexander having died without children, her husband was entitled to one-half of the slaves, and the defendants, as father and mother, to the other half, in equal portions.   By the Statute of Distribution, the plaintiff and the defendants were co-parceners ; and the question is, whether the possession of defendants was so adverse to the plaintiff, he being a co-heir, as to support the plea of limitation.   No question has been raised, as to whether there should not have been administration on this estate, and whether co-distributees could hold adversely to each other, until after the close of administration.   Admitting that there was no necessity to administer, (there being, perhaps, no debts, or the debts being paid,) and that the rights

of the parties, as heirs, could not be disturbed or superseded by a paramount claim under administration, it would seem that the proof in this case was not sufficient to authorise a verdict for defendants.

That the possession of one co-heir or co-tenant, is the possession of the other co-heirs, and is taken in trust for their benefit, is an elementary and indisputable principle of law. But this possession may become adverse to the other heirs, by acts or declarations repelling the presumption that the possession is in the character of a co-heir, and which show clearly a claim of exclusive right. One tenant in common may disseize, or hold adversely to another tenant in common ; but the hostile intent of the possession should be manifested by acts of a more unequivocal character than would be necessary in ordinary cases, where there is no privity of estate between the claimants to the property.

The difference, says Judge Story, between the two cases is, that acts, which, if done by a stranger, would *per se* be a disseizin, are, in the case of tenancies in common, susceptible of explanation consistently with the real title. Acts of ownership in tenancies in common, are not necessarily acts of disseizin. It depends on the intent with which they are done, and their notoriety. The law does not presume that one tenant in common intends to oust another. The fact must be notorious, and the intent must be established by proof. (Prescott *et al.* v. Nevers *et al.*, 4 Mason, R. 326–30–31 ; vide 9 Cowen, 24.)

In Pennsylvania it has been held that, to prove a tenant in common has claimed the whole exclusively, it is not necessary to show that he has made an express declaration to that effect. This was stated in Lodge v. Patterson, 3 Watts, 74. It was said that the hostile intent must be manifested by outward acts of an unequivocal kind ; that, to constitute a deseizin, it never was held that notice should be sent to the dissiezee, or that it must be proved that he had knowledge of the entry and ouster committed on his land.

In the subsequent case of Hart v. Gregg, 10 Watts, 185, it was ruled in effect, that the mere entry of a co-heir into land of the ancestor, claiming it all, and taking the rents and profits for 21 years, (the term of limitation in Pa.,) is no disseizin of the other heirs ; there must be some plain, decisive, unequivo·cal act on the part of the heir so entering, amounting to an adverse and wrongful possession in himself, and a disseizin of the others. In this case there was evidence of facts within the 21 years, which amounted to a recognition of the rights of the other co-heirs.

In a succeeding case, Law v. Patterson, 1 Watts & Serg. 184., the effect of taking possession by one of the co-heirs, and receiving the profits for his own benefit during twenty-one years, the term of limitation, is learnedly discussed. It is said that, to prove a tenant in common has claimed the whole exclusively, needs not his express declaration to that effect ; for it may be shown as clearly from his acts as from his words. For this purpose, it will be sufficient to show that he took possession of the whole of the land, as if it had been his own exclusively ; that he was in the sole and uninterrupted possession for more than the time of limitation ; that he received the rents and profits without accounting to his co-heirs for any part thereof, and without any demand having been made by them for such accounting, or evidence of his having acknowledged the claims of his co-tenants.

It seems that the notion, once entertained in regard to what was necessary to constitute an actual ouster by a tenant in common, has given way, and that an undisturbed and quiet possession for a certain length of time, is sufficient ground for the jury to prove an actual ouster. (Ib. 10 Sergt. & Rawle, 188.) In Pennsylvania, such quiet possession and exclusive claim of the whole for the period of limitation, is evidence from which the jury may presume an *actual ouster*. (See last cases cited.)

In Doe v. Prosser, Cowper, 217, it was said that the possession of one tenant in common *eo nomine* as tenant in com-

mon, cannot bar his companion, because such possession is not adverse to his right, but in support of the common title, and by paying him his share he acknowledges him to be his co-tenant. Nor indeed, is a refusal to pay, of itself sufficient, without denying his title. But if upon demand of his co-tenant of his moiety, the other denies to pay, and denies his title, and continues in possession, such possession is adverse. But in the report of this case by Lord Mansfield, on the rule to shew cause why a new trial should not be granted, it is shown that there was no express denial of plaintiff's title by defendant, or refusal to pay him a share of the rents and profits. Nothing appeared, except that one tenant in common had been in possession for thirty-six years, without claim or demand under the other tenant in common ; that no actual ouster was proved. The Court instructed the jury that they were warranted, from the mere length of time, to presume that the possession was adverse. His lordship continued to be of the same opinion ; that some ambiguity had arisen from the term actual ouster, as if it meant some act accompanied with real force, and as if turning out by the shoulders were necessary. But that was not so. A man may come in by rightful possession, and yet hold over adversely without title. If he does, such holding over, under circumstances, would be equivalent to an actual ouster. (Angell on Lim. 460.)

In the above case the co-tenant had held for sixteen years longer than the term of limitation under the Statute of 21 James I. The current of authorities is in support of the doctrine as laid down in the above case of Doe v. Prosser, viz : that mere possession of a tenant in common for a great length of time, would be evidence on which a jury may presume an actual ouster. (3 Met. 100 ; 6 Cowen, 632 ; 6 Dana, 432.) In Pennsylvania it seems well established from the cases cited, that the sole, undisturbed possession of one tenant in common, receiving the rents and profits for himself, without recognition of the claim of his co-tenants, will be evidence

from which an ouster may be presumed. In the case of Law v. Patterson, 1 Watts & Serg. 184, in which this rule was distinctly affirmed, the acts of ownership by the tenant in common in possession, were very unequivocal ; such as, for instance, leasing the land in his own name and receiving the rents for twenty-three years, without any claim by the other tenant in common, erecting a dwelling-house and other improvements, paying the taxes, and even paying the purchase money for the land.

If the mere possession by a co-heir or co-tenant, with the exercise of notorious acts of exclusive ownership for the period of limitation, be a circumstance from which ouster may be presumed, the inference of adverse possession and ouster is very strong against the plaintiff in this case, from the fact that nearly twice the statutory term of limitation had intervened prior to the bringing of suit. But in this case the evidence of exclusive claim is not satisfactory. The suit proceeds on the supposition that the slaves had been the property of the wife. In consequence of her ill health she and husband returned with the negroes to her father's house, where she died. The negroes were in the possession and under the control of the husband during the life of the wife, and at her death, he being already in possession, being also a co-heir with defendants and entitled to administration, was the better entitled to remain in possession. But it is said he left them in posssession of defendants. If this means that he abandoned the possession, he was of course precluded at the end of the two years. But if it mean that he, having the best right, or even an equal right, left them with his co-heirs, and this is the more rational interpretation of the language, it seems that there was a superadded confidence and trust reposed, in addition to that arising by operation of law from the capacity of defendants as co-heirs.

Again, the acts of ownership of the co-heir, viz : those which show the possession to be in an exclusive right, must be very

unequivocal. Here there is positively evidence of no act except the payment of taxes upon the slaves, claiming them as their own. This is not sufficient. It is a circumstance which, with others, will show the possession adverse. But the mere fact that one co-heir pays the taxes will not ripen by length of time, into title to the property. If there had been evidence to authorise the charge of the Court, which was upon the presumption that there had been public and notorious acts of ownership on the part of the defendants, the judgment must have been sustained. But there seems to have been no other act except the payment of taxes; and if the property was left by plaintiff with defendants, under circumstances (as seems probable from the language of the statement of facts) which would exclude the presumption that the defendants intended to claim exclusively, or at least that the plaintiff could have reasonably imagined, that they would set up such pretension, then certainly the evidence was not sufficient to warrant the jury in finding their verdict.

To prevent misapprehension, it may be observed that there are many acts by a tenant in common, which will immediately give currency to the Statute of Limitations; as, for instance, a purchaser from a tenant in common entering under a recorded deed, or notoriously claiming the whole of the property, and other acts so hostile and repugnant to the claim of other co-heirs, as to show the possession to be not as co-heir, but in an adverse right. (Crozier v. Andrews, 11 Tex. R. 170; Portis v. Hill, 3 Id. 273.)

Upon the whole, though the neglect of the plaintiff to claim an account and division, for nearly four years, is a presumption of abandonment of his rights; yet, as the property was left by him with those who might, in a certain sense, be regarded as standing in the relation of parents, and there being no evidence of any such acts of ownership as would, by reasonable diligence, apprise him of there being an adverse claim, and as the defendants did not take the possession, but they

came into it by the voluntary act of plaintiff, reposing, as we must suppose, a high degree of trust and confidence in their fidelity and just regard to his rights, we must hold the verdict unwarranted by the evidence; and the judgment is, therefore, reversed and cause remanded.

Reversed and remanded.