Rowan GREEN, Appellant,

v.

John T. VANCE et al., Appellees.

No. 13168.

Court of Civil Appeals of Texas.

Houston.

March 6, 1958.

Rehearing Denied April 3, 1958.

Fields & Carroll, Port Lavaca, Donald Carroll, Tyler, for appellant.

John T. Vance, Callaway S. Vance, Cullen B. Vance, Edna, each pro se.

WOODRUFF, Justice.

Appellees, John T. Vance, Callaway S. Vance, and Cullen B. Vance, filed this trespass-to-try-title suit in the District Court of Jackson County, Texas, on August 16, 1956, against the appellant, Rowan Green, seeking judgment for title and possession

of 5 acres of land known as Farm Tract No. 2408 in Francitas Farms, a subdivision located in that county. Appellant answered with a plea of not guilty and specially pled the ten-year statute of limitations and his peaceable and adverse possession of the land for more than ten years prior to the institution of suit.

Appellant filed a judicial admission stipulating that appellees are the record owners of the tract involved, thereby limiting the question to be determined to appellant's claim under the ten-year statute of limitations.

The facts showed that appellant purchased Francitas Farms Tracts Nos. 2401 through 2404 in 1925 from one Bucky Gayle and took possession of all land within a fenced enclosure, aggregating about 54 acres, purporting to embrace 10 five-acre tracts starting on the west with Tract No. 2401 and continuing through Tract No. 2410 and Tract No. 2410-A on the east. Each tract, so it appears from the map of the subdivision, measured 1,320 feet north and south and 165 feet east and west, except Tract No. 2410-A which was the same length but of a lesser width. Tract No. 2408 in issue in this case laid in its numerical order in the tier of lots. There is a road running east and west along the south end of the tracts and another road running north and south along the east side of Tract No. 2410-A.

The appellant's claim is based upon his asserted adverse possession for a period of ten years or more between March 12, 1940, and August 16, 1956, the date of the filing of this suit. Appellant offered proof to establish that he either personally or by tenants occupied and used the land within the enclosure continuously from 1940 until August 16, 1956. The witness W. W. Griffith testified that appellant leased the whole tract to him in 1942 and that he and his family and subtenants used it from 1942 through 1948. The four farm tracts on the west consisting of about 20 acres were farmed and the remainder of the enclosure was used as a pasture. Appellant testified he leased the land from 1949 through 1951 to his son-in-law, Cecil Jones, who also farmed and grazed the various tracts, as above indicated. Jones lived on the place in 1949 and 1950. During this time it was enclosed by a fence, and in 1952 appellant again leased the land to W. W. Griffith, who continued to use it until 1956.

The tax records reflected that both the appellant and appellee, Cullen B. Vance, rendered Tract No. 2408 for taxes beginning with the year 1943 and continuing through 1956 and paid taxes thereon during the same period.

It was shown that on October 1, 1939, appellant, Rowan Green, filed a trespass-to-try-title suit against Margaret Bateman, appellees' predecessor in title, and ten other defendants, for the title and possession of four of the tracts within his enclosure, one of which was Tract No. 2408. It was also shown by a certified copy of the judgment in that case that the cause proceeded to trial on March 12, 1940, and at the conclusion of Rowan Green's evidence on the following day the court directed a verdict against him and entered judgment denying him a recovery against the defendants or any of them.

Margaret Bateman by deed dated March 13, 1940, and duly recorded April 25, 1940, conveyed Farm Tract No. 2408 to appellees.

It was undisputed that subsequent to that judgment appellant Green had never given any oral or written notice to either Margaret Bateman or any of the appellees that he was asserting any adverse claim to Tract No. 2408, and that appellees learned for the first time of such a claim when appellant executed a mineral lease on the tract a very short time before the filing of this suit on August 16, 1956.

At the close of the testimony appellees Vance moved for an instructed verdict because under the undisputed proof appellant continued in possession of Tract No. 2408

after the judgment of March 13, 1940, as their tenant at sufferance and, as a matter of law, he could not assert an adverse claim without first giving them or their predecessor in title, Mrs. Bateman, actual notice thereof; that the proof showed the fences were broken down at various times and that there was no testimony showing that all of Tract No. 2408 was within the appellant's enclosure.

Appellant likewise moved for an instructed verdict, contending that the undisputed proof showed that he and those holding under him had maintained under a claim of right continuous and uninterrupted possession of the tract for more than 13 years, using and cultivating the same, all of which was enclosed by a fence capable of turning stock. After hearing arguments thereon, the trial court instructed the verdict for appellees and thereafter rendered judgment in their behalf awarding title and possession to them. Appellant duly excepted, and has properly perfected his appeal.

Under his First and Fifth Points appellant contends that the trial court erred in holding that there was no evidence raising the issue that appellant's possession was adverse to appellees, and in holding that he was their tenant at sufferance.

By his Sixth Point appellant asserts that the evidence conclusively established his claim under the ten-year statute of limitations.

The testimony showed that after March 13, 1940, the date the judgment was rendered in the former suit, appellant continued to keep Farm Tract No. 2408 within his enclosure and to use it as a part of the pasture, as he had theretofore done. He contends it was not necessary that he give appellees or their predecessor in title any actual notice that he was claiming the land adversely in order to perfect his claim under the ten-year statute of limitations, and being an adversary party in the judgment, his holding over was not subservient to them and no express notice by him was required.

These points, we believe, are to be determined by the status of one who continues in possession of property after a judgment is rendered against him therefor in an adversary action in trespass to try title.

We know of no better approach to this question than to consider the three factual situations suggested by Justice Norvell in Park v. Sweeten, 270 S.W.2d 687, when he was a member of the Fourth Court of Civil Appeals. They are: (1) Where the grantor retains possession of land after executing a deed thereto; (2) where the losing party in an adversary suit retains possession of land after judgment is rendered against him therefor; and (3) Where a party who has consented to a judgment divesting him of title to land nevertheless retains possession of it.

■ The law in this State is now settled by the ruling in Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794, that the holding over and continued occupancy of one who comes within either the first or third categories above set forth is regarded as subservient to the grantee or the party in whose favor the agreed judgment is entered. Therefore, in the absence of actual notice of repudiation of tenancy or unequivocal and notorious acts evidencing a repudiation thereof, the continued occupancy of substantially the same nature and kind as maintained before the conveyance or rendition of judgment, is wholly insufficient to support a finding of adverse possession in his behalf, although such might be sufficient to support a finding of adverse possession under the statute in ordinary circumstances.

We shall not attempt to review the authorities which we believe played a part in bringing the rule in Texas into alignment with the general American rule before Park v. Sweeten was decided. Among the most notable, however, were Davis v. Morley, Tex.Civ.App., 169 S.W.2d 561; Kidd v.

Young, 144 Tex. 322, 190 S.W.2d 65; and Scott v. Rodgers, Tex.Com.App., 6 S.W.2d 731. The first two of these cases are discussed in the opinions rendered in Park v. Sweeten, supra, and reference thereto is here made.

We recognize that our Supreme Court in Sweeten v. Park, supra, expressly approved the holding of the Court of Civil Appeals only as it pertained to categories (1) and (3) and declined to consider category (2) because the case did not involve the holding over by a party against whom a prior judgment had been rendered in an adversary suit.

The specific category involved was that of a defendant remaining in possession after the entry of a consent decree against him, and the Supreme Court expressly approved the opinion of the Court of Civil Appeals in its holding that Kidd v. Young, supra, overruled the early decisions in this State of Smith v. Montes, 11 Tex. 24; Harn v. Smith, 79 Tex. 310, 15 S.W. 240; and Thomson v. Weisman, 98 Tex. 170, 82 S.W. 503, which subscribed in principle to the theories being advanced by the appellant here.

In this connection the Supreme Court in its opinion on page 797 of 276 S.W.2d, said:

"We are called upon to overrule the holding of Kidd v. Young on that point. It is pointed out that it cannot be harmonized with earlier cases by this court, notably Smith v. Montes, 11 Tex. 24; Harn v. Smith, 79 Tex. 310, 15 S.W. 240, and Thomson v. Weisman, 98 Tex. 170, 82 S.W. 503. We are reminded that our opinion in Kidd v. Young did not mention those prior contrary decisions. We have inspected the record in that case and find that in his motion for rehearing the losing party relied on Smith v. Montes, and Harn v. Smith, both supra. We cannot say, therefore, that those cases were overlooked. As stated in

the opinion of the Court of Civil Appeals, with the citation of many supporting authorities, Kidd v. Young is in line with the decided weight of authority in this country. To overrule it would be to realign our court with the minority. No impelling reasons are perceived for adopting that course. Having cast our lot with the weight of authority, we think wisdom dictates that we remain there."

Moreover, it was held in Davis v. Morley, Tex.Civ.App., 169 S.W.2d 561, 567, that the continued possession of land after the rendition of a judgment divesting the one in possession of title thereto and vesting it in another is considered to be in subordination to the title adjudicated, and such possession is not adverse without first bringing express notice to the prevailing party that the claim of the one in possession is adverse and hostile to him.

In disposing of this point the court said:

"The law is well settled that the continued possession of land after a judgment of a court of competent jurisdiction has been rendered in which the possessor is divested of title and the title is vested in another is considered in subordination to the title so adjudicated. Appellant could not assert adverse possession after the decree against her without bringing express notice to appellee that her claim was adverse and hostile to that of the latter. Without such notice, her possession during the time intervening between the decree and the institution of the instant suit gave her no better right than she possessed before the decree was entered. Such notice not having been given, her possession was not adverse but was subordinate to the title of appellee. Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123; * * *."

The rule is also stated in Texas Jurisprudence, Ten Year Supplement, Vol. 1,

par. 69a, under Adverse Possession, as follows:

"§ 69a (New). Possession After Judgment Divesting Title.—The law is well settled that the continued possession of land after a judgment of a court of competent jurisdiction has been rendered in which the possessor is divested of title and the title is vested in another is considered in subordination to the title so adjudicated. The one from whom title has been divested may not assert adverse possession after the decree without bringing notice to the one in whose favor judgment was rendered that his claim is adverse and hostile." Citing Davis v. Morley, Tex. Civ.App.1943, 169 S.W.2d 561, 567.

After a careful study of the authorities, we agree with the opinion as expressed by the Court of Civil Appeals in Park v. Sweeten, supra, that no logical distinction can be drawn between a holding over after the execution of a deed and a holding over after the rendition of a judgment which is either adversary in nature or by consent. To draw any such distinction, we believe, would not only be contrary to sound reasoning but also contrary to the expressions found in the opinions of some of our appellate courts, as heretofore pointed out, and the weight of the American authorities. Moreover, to make a distinction between an adversary judgment and a consent judgment would likely lead to confusing and unreal results in that frequently in reading decrees entered in trespass-to-try-title cases it is by no means clear whether they were actually adversary proceedings or were uncontested or were settled by an agreed judgment.

■ It is undisputed in this case that the appellant gave no actual notice of any adverse claim, but only continued to keep the tract in suit enclosed in his pasture after the rendition of the March 13, 1940, judgment. Such possession amounted to no more than that of a tenant at sufferance, and was wholly insufficient to raise any issue of fact under the ten-year statute of limitations. Scott v. Rodgers, Tex.Com.App., 6 S.W.2d 731; Kidd v. Young, 144 Tex. 322, 190 S.W.2d 65; Park v. Sweeten, supra.

In this connection we should add that we have carefully considered the case of Power v. Jones, Tex.Civ.App., 135 S.W.2d 1054, error dism. c. j., and Harvey v. Peters, Tex. Civ.App., 227 S.W.2d 867. In our opinion they are quite different from the case before us because in both of them there was such long and continuous occupancy and possession of the property, uninterrupted by any judgment being rendered against them for the property (27 years in the first case and 35 years in the latter), coupled with unequivocal, notorious and exclusive acts inconsistent with the recognition of any title in all others, except the occupant, that they raised a rather strong inference of notice to the owner and from which it could be rightfully presumed that such notice was given. We are wholly unable to apply those cases to the facts here.

Appellant's First, Fifth and Sixth Points are, therefore, overruled.

In view of the foregoing ruling, which we believe is dispositive of this appeal, we will omit discussion of appellant's Second, Third and Fourth Points.

However, it may be said in passing that appellant's contentions presented under his Second and Fourth Points, that the learned trial court erred in holding that appellant could not recover as a matter of law because the fences were down from time to time for a few days and that they were not originally built by appellant, are by no means without support under the holdings of Ogletree v. Evans, Tex.Civ.App., 248 S.W.2d 804; Ross v. Houston Oil Fields Association, Tex.Civ.App., 88 S.W.2d 586, writ dism.; Moran v. Moseley, Tex.Civ. App., 164 S.W. 1093; Johnson v. Sullivan, Tex.Civ.App., 163 S.W. 1015.

Judgment affirmed.