Flossie Bell GARRETT et al., Appellants,

v.

Vallee Stringfellow DOWNS et al., Appellees.

No. 16302.

Court of Civil Appeals of Texas.

Dallas.

Jan. 31, 1964.

Rehearing Denied March 20, 1964.

Ely Straus and Robert A. Neathery, Dallas, for appellants.

C. C. Renfro, Biggers, Baker, Lloyd & Carver and Ralph D. Baker, Dallas, for appellees.

DIXON, Chief Justice.

Flossie Bell Garrett and several other plaintiffs filed suit July 27, 1961 in trespass to try title and to remove cloud from title to their alleged interest in approximately 19 acres of land in Dallas County, Texas. The defendants are Vallee Stringfellow Downs, Veterans Land Board, Everts E. Jackson and William A. Long. Vallee Stringfellow Downs is the grantor in a deed to William A. Long.

Plaintiffs sued as heirs of their mother, Amanda Moore Stringfellow. Defendants answered with pleas of general denial, not guilty and limitations, and further pled that plaintiffs' claim was long ago concluded when Amanda Moore Stringfellow, through her husband, accepted a partition deed for her share of the estate of her deceased brother, James P. Moore.

A jury in answering special issues found that (1) Henry C. Moore, under whom defendants claim title, held peaceable and adverse possession of the 19 acres in question, cultivating, using, or enjoying the same for a period of ten consecutive years before his death in 1948; (2) defendant Everts E. Jackson and those under whom he claims similarly held peaceable and adverse possession of 16.926 acres out of the 19 acres for ten years prior to 1948; (3) defendant William A. Long and those under whom he claims similarly held peaceable and adverse possession of all the 19 acres of land in question (except the 16.926 acres claimed by Everts E. Jackson) for ten years after March 8, 1948 and before July 27, 1961; (4) plaintiffs and those under whom they claim did not exercise any dominion or control over the 19 acres in controversy during the twenty-five years immediately preceding July 27, 1961; and (5) plaintiffs have not paid any taxes on the land in controversy for any year during the last twenty-five years preceding July 27, 1961.

Based on the jury verdict judgment was rendered that plaintiffs take nothing and that title be confirmed in the defendants, Veterans Land Board, Everts E. Jackson and William A. Long.

## FACTS

Some of the facts have been stipulated by the parties. The common source of title is James P. Moore who died in 1890 owning 270 acres of land including that in controversy. He left as his heirs five brothers, one of whom was Henry C. Moore, one sister, Amanda Moore Stringfellow, under whom plaintiffs claim title, and two half sisters. In 1893 one of the surviving brothers, Henry C. Moore, acquired the interests of all the other heirs of James P. Moore except that of his sister, Amanda Moore Stringfellow, plaintiffs' mother. Thus Henry C. Moore and his sister, Amanda Moore Stringfellow, became cotenants of the property in controversy.

Amanda Moore Stringfellow died in 1909.

Henry C. Moore died in 1948. By will he left his estate to his three daughters. Through successive conveyances the property here in dispute was acquired by defendants William A. Long and the Veterans Land Board. In 1959 the Veterans Land Board entered into a contract to sell 16.926 acres of the land to defendant Everts E. Jackson.

The record includes a deed from the Estate of Henry C. Moore and his daughters dated May 28, 1948 to Ben Stringfellow

(not related to plaintiffs) and his wife, conveying the tract of land in dispute.

The defendants presented as a witness one M. L. Robertson, a real estate broker, who testified that he had lived in the vicinity of the land in dispute for about eighteen years. During that time he had personal knowledge of the land and its fence lines. Ben Stringfellow, now dead, a grantee in 1948 of the land from the William C. Moore Estate, owned the land, had possession of it and claimed it for eighteen years. Robertson testified that the fences had been on the land ever since he had known it and there had been cattle on it; that some of the land was not under fence now, but had been all the years except the last three or four years. He knew Ben Stringfellow and his wife and two sons. Ben Stringfellow lived in a house on the land for fifteen to eighteen years. However, when pressed on cross examination Robertson admitted that he had never walked the fence lines, so he did not know absolutely that the land was completely fenced during all that time. He further admitted that Ben Stringfellow lived in the nearby town of Carrollton when he first knew Ben Stringfellow and that he did not really know how long Ben Stringfellow had lived on the land in controversy.

Included in the record is Defendants' Exhibit No. 4, which is an affidavit dated February 20, 1948 signed by Maude Holley, a daughter of Henry C. Moore, and E. R. Wolters and M. C. Milliken. Plaintiffs objected to this document as hearsay. The affiants deposed that in 1891 and 1892 the land of James P. Moore was partitioned among the brothers and sisters of James P. Moore; that Henry C. Moore received a tract of land in the partition including the land in dispute; that he immediately went into possession of his land, which was under fence and was occupied, used, cultivated and claimed by Henry C. Moore for more than fifty years. The affidavit contains many other statements in regard to adverse possession which statements are in the nature of legal conclusions.

Also in the record is Exhibit No. 16, a deed dated January 4, 1892 from H. C. Moore, Mary O. Moore, J. H. Bennett, Mary A. Bennett and T. J. Parrish to T. J. Stringfellow, husband of Amanda Moore Stringfellow. This is the instrument which defendants contend is a partition deed whereby Amanda Moore Stringfellow accepted her share of the estate of her brother, James P. Moore, consequently she could not thereafter claim any interest in the land which is the subject of this suit, nor can her heirs do so now.

This alleged partition deed requires further description. It recites a consideration of "Three hundred and two Dollars, paid by T. J. Stringfellow—*paid by relinquishment of his claim against the J. P. Moore Estate.*" It further recites "and in conveying this land it is done with the distinct understanding that *the said T. J. Stringfellow does release all of his claim on all other parts of the Estate, and he accepts this deed as his share of the said estate as inherited by his wife.*" (Emphasis ours.)

It will be noticed that T. J. Stringfellow, not his wife, Amanda Moore Stringfellow, accepted this deed as his share of his wife's inheritance. Defendants claim that this deficiency in the instrument could not later be urged by Amanda Moore Stringfellow or her heirs, because on January 25, 1893, Amanda Moore Stringfellow, as shown by Exhibit No. 17, joined her husband in conveying the same land to one H. F. Holley. It is defendants' view that as a result of her executing this deed Amanda Moore Stringfellow ratified the acceptance of the alleged partition deed for her by her husband, and she and her heirs were forever afterward estopped to claim an interest in the land now in dispute.

Several of the plaintiffs testified. But for the most part their testimony went little further than to establish the family relationship among the parties. For many years they have not been on or near the land. They have established residences in another state and in other communities. They knew

nothing of any claim they might have to the property in dispute until four or five years ago when one of the plaintiffs, now a resident of California, was sent a form of release which he was asked to sign.

One of the plaintiffs, seventy-five years of age at the time of the trial, testified that in his youth he knew Henry C. Moore. The witness then lived on his mother's farm nearby. When he was about nineteen years of age he heard his uncle, Henry C. Moore, tell a Mr. Kirk that his, Henry's, sister, Mandy Moore, owned 19 acres that were in his possession. Evidently the jury, judging from the jury verdict, did not believe this testimony.

## OPINION

Plaintiffs' contention is that following the death of James P. Moore in 1890, Henry C. Moore, having acquired all interests in James P. Moore's estate except that of his sister, Amanda Moore Stringfellow, became a cotenant with his sister, Amanda Moore Stringfellow, of the land in dispute; that the land was never partitioned; and that neither Henry C. Moore nor his successors in title ever acquired the interest of Amanda C. Moore or her successors in title by adverse possession, or otherwise.

In their first ten points on appeal and their twelfth and fifteenth points, plaintiffs assert in effect that the court erred in overruling their motion for instructed verdict; in overruling their objections to the court's charge; and in rendering judgment for defendants based on the jury's answers because there was either no evidence of adverse possession under Arts. 5510, 5519 or 5519a, Vernon's Ann.Civ.St., or the evidence was insufficient to support the jury's answers, that is, the answers were contrary to the overwhelming weight of the evidence.

In our opinion the evidence in this case was insufficient to support the jury's verdict, or the judgment in favor of defendants.

The affidavits in regard to the ownership, possession and claim of title by Henry C.

Moore by partition and adverse possession are hearsay and in part legal conclusions.

■ The so-called partition deed of 1892 is on its face insufficient to divest Amanda Moore Stringfellow of her interest in the estate of her deceased brother, James P. Moore. Her husband, T. J. Stringfellow, could not by accepting said deed deprive Amanda of her inheritance. And Amanda did not ratify his purported relinquishment of her inheritance by subsequently joining her husband in conveying to H. F. Holley the land described in the alleged partition deed. There is no showing that she knew of the recitals in the alleged partition deed, or realized their import. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 232, 136 S.W.2d 207. In the absence of such knowledge there could be no ratification. 2 Tex. Jur.2d 534. Moreover, defendants did not plead ratification or estoppel.

■ The inconsistent testimony of M. F. Robertson does not satisfy the requirement that title by limitation must be established by clear and unmistakable evidence. The authorities are in agreement that one asserting title by limitation has the burden of proving every fact necessary to give such title. The claimant must show use, claim of title, and possession hostile to the claim of another. Monroe, et al. v. Lyons, Tex. Civ.App., 189 S.W.2d 90; Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781, 787; 2 Tex.Jur.2d 367–368. Such proof must be clear and satisfactory, and this is especially true where a cotenancy exists, as it did in this case. Our Supreme Court has said: "The * * * authorities show that possession of a cotenant will be presumed to be in his right as cotenant and that acts relied upon to establish an ouster of his contenants and to start the running of limitation against them must be of such unequivocal nature and so distinctly hostile to their rights that the intention to disseize is clear and unmistakable." Poenisch v. Quarnstrom, Tex., 361 S.W.2d 367, 370.

■ So far as appellants' first ten points and their twelfth and fifteenth points assert that there is no evidence to support the jury's verdict we overrule them; so far as they assert that the evidence is insufficient to support the jury's verdict, that is, that the verdict is contrary to the overwhelming weight of the evidence, we sustain them.

In their eleventh and thirteenth points plaintiffs complain that Special Issues Nos. 5 and 6 as drawn erroneously placed the burden of proof on plaintiffs to establish defendants' pleas of limitation. We do not agree with plaintiffs.

The two issues inquired (5) whether the jury found from a preponderance of the evidence plaintiffs and those under whom they claim "have *not* exercised dominion or control over the 19 acres in controversy * * * during the twenty-five years" preceding the date of the filing of suit; and (6) whether plaintiffs have *not* paid taxes on said land for any year of said twenty-five year period. (Emphasis ours.)

■ Under Arts. 5519 and 5519a it is necessary for one claiming title by adverse possession to show that those holding apparent record title have *not* exercised dominion or paid taxes thereon · one or more years during the twenty-five year period. Thus the claimant by adverse possession has the burden of proving the negative of the issues. The burden would be erroneously placed on the apparent record title claimant if he were to be required to show by a preponderance of the evidence that he *did* exercise control or *did* pay taxes every year during the twenty-five year period. 2 Tex.Jur.2d 373. Appellants' eleventh and thirteenth points are overruled.

In their fourteenth point plaintiffs say that it was error to submit Special Issue No. 6 because there is no evidence that defendants paid any taxes on the property. We agree that there was no such evidence. But the issue did not inquire whether defendants had paid any taxes. It inquired whether plaintiffs had not paid taxes. The fourteenth point is overruled.

Plaintiffs have prayed that we reverse the court's judgment and render judgment for plaintiffs; or in the alternative that we reverse the judgment and remand the cause for another trial.

■ Since we have overruled plaintiffs' "no evidence" points and sustained their "insufficient evidence" points we may not reverse and render; we may only reverse and remand. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Calvert, " 'No Evidence' and 'Insufficient Evidence' ", 38 Tex. Law Rev. 361.

■ Further, we are of the opinion that the facts have not been fully developed in this case and that the cause should be remanded for another trial. Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77.

The judgment of the trial court is reversed and the cause remanded to the trial court for another trial.

Reversed and remanded.