**H. N. HORROCKS, Appellant,**

v.

**Billy Jack HORROCKS and Jim Horrocks, Appellees.**

**No. 20399.**

Court of Civil Appeals of Texas, Dallas.

Oct. 10, 1980.

---

Robert L. Scott, Crouch & Scott, Greenville, for appellant.

Harold F. Curtis, Jr., Curtis & Fugitt, Greenville, for appellees.

Before AKIN, CARVER and STOREY, JJ.

AKIN, Justice.

This is an appeal by defendant from an adverse summary judgment in a partition suit between cotenants. Defendant H. N. Horrocks asserted that he had acquired title to the entire fee by adverse possession under both the ten (10) year and twenty–five (25) year statutes of limitations. Because the defense of adverse possession by limitations is an affirmative defense, the defendant had the burden of raising a fact issue with respect to this defense. This he failed to do. Accordingly, we affirm.

Plaintiffs, Billy Jack Horrocks and Jim Horrocks, filed suit for partition of one hundred thirty acres of land in which they had an undivided five–twelfths ($\frac{5}{12}$) fee title interest. Named as defendants, were their grandfather, H. N. Horrocks, who also owned an undivided five–twelfths ($\frac{5}{12}$) fee interest in the land, and their uncle Walter White, who had a two–twelfths ($\frac{2}{12}$) fee interest. Whether Walter White was still alive was unknown to the parties. Accordingly, the trial judge appointed an attorney ad litem to represent White and/or his unknown heirs. Defendant Horrocks responded by pleading title by limitation, relying on both the ten (10) year and twenty–five (25) year statutes of limitations, Tex.Rev.Civ. Stat.Ann. art. 5510 (Vernon 1958), art. 5519 (Vernon Supp.1980), and art. 5519a (Vernon 1958).

The parties stipulated that their common source of title was an ancestor, Harry Horrocks, who acquired the property by deed from his parents on May 9, 1908. Harry died intestate on May 28, 1908. The property was apparently his separate property. The heirship of Harry Horrocks was established by answers to requests for admissions, which established that Harry Horrocks and his wife, Joe Ella Horrocks, had three children, Mable Horrocks White, Bernice Horrocks Fuller, and defendant H. N. Horrocks. Mable White, who had married Walter White, died, childless and intestate, on February 12, 1918. Walter White left the area shortly thereafter and his whereabouts or that of his heirs, if any, are unknown. Joe Ella Horrocks, Harry Horrocks' widow, died intestate in 1946 and Bernice H. Fuller died testate in 1973, leaving her undivided interest in the property to plaintiffs. Thus, all parties agree that legal title to the property is as follows:

Appellant H. N. Horrocks–$\frac{5}{12}$ths;

Appellees Billy Jack Horrocks and Jim Horrocks, jointly–$\frac{5}{12}$ths;

Walter White and his unknown heirs–$\frac{2}{12}$ths.

Plaintiffs filed a motion for summary judgment on the ground that they were entitled to a judgment for partition as a matter of law upon undisputed prima facie legal title. In addition to the facts estab-

lished by the stipulation and the answers to requests for admissions, plaintiffs rely upon a rental division order with Humble Oil and Refining Company signed on August 4, 1954, executed by defendant H. N. Horrocks and his deceased sister, Bernice H. Fuller, through whom plaintiffs obtained their undivided interest in the property. H. N. Horrocks filed a response to the motion for summary judgment asserting his affirmative defense of title by limitations.

■ The burden of raising a fact issue with respect to the existence of this affirmative defense, through introduction of summary judgment evidence, rested on H. N. Horrocks. Unless he met this burden, the plaintiffs were entitled to a summary judgment recognizing such title and to a partition of the contested property. *See, e. g., Whatley v. National Bank of Commerce,* 555 S.W.2d 500, 503 (Tex.Civ.App.–Dallas 1977, no writ). Thus, the question before us is whether H. N. Horrocks has introduced summary judgment evidence raising a fact question with respect to his affirmative defense of title by limitations.

H. N. Horrocks' summary judgment evidence consisted of an affidavit as follows:

On or about the 26th day of September, 1917, I, Henry N. Horrocks, moved on and established a residence on the property more fully described in Paragraph II of Plaintiff's Original Petition. From September 26, 1917, until approximately the year of 1960, I, along with my wife and children, without interruption have lived on the property above described. I further state that from the date that my mother died in 1946 until the present, that I have claimed the exclusive right and ownership to the above described land. I individually have fenced the land and maintained the fences. I have raised and pastured cattle on the land, sold the cattle, and retained all of the proceeds from the sale of the cattle. From 1946 to the present, I have always claimed the land as mine and no one else's. During this period of time, no one has ever claimed the land against me. During the period of time from 1946 until the present, I have always paid the taxes on the property, and no one else has ever paid the taxes. During the period of time set forth herein, which exceeds twenty–five (25) years, I have made all of the improvements to the property, including terracing of the property, sodding the land with grass, and digging a stock pond. I have paid for all expenses incurred for improving and maintaining the property during this period of time, and no one else has paid any part of these expenses. From 1946 until the present, I have been the exclusive user and possessor of the land in question. No one else has ever used or attempted to use the land for any purpose whatsoever. I have at all times from 1946 to the present claimed the exclusive ownership of the property.

/s/ H. N. Horrocks
H. N. HORROCKS

Appellant contends that his affidavit raises fact issues with respect to his affirmative defense of limitations. He recognizes that his claim of limitation title is valid only if his affidavit raises a fact issue with respect to notice to his cotenants of repudiation of their title so as to put his cotenants, or their predecessors in title, on notice that he was claiming the property adversely to them. In this respect, he relies upon his long continued possession as a user of the property to establish "constructive notice." We cannot agree with this contention. Instead, we hold that defendant's affidavit fails to raise a fact issue with respect to title by limitations, because his affidavit does not raise a fact issue with respect to some act which would have placed his cotenants on notice of his claim adverse to their title.

■ Articles 5510 and 5519 require, among other things, that the party asserting title by limitations have been in "adverse possession" for the applicable periods of time. "Adverse possession" is defined as "an actual and visible appropriation of the land, commenced and continued *under a claim of right inconsistent with,* and hostile to the claim of another." Tex.Rev.Civ.Stat. Ann. art. 5515 (Vernon 1958). Since the

parties in the present suit stand in the relation of cotenants to one another, the question of whether H. N. Horrocks' affidavit sets forth some evidence of possession adverse to the plaintiffs must be determined in light of that relationship. *Todd v. Bruner*, 365 S.W.2d 155 (Tex.1963).

Since possession by a cotenant is presumed to be in recognition of common title, the cotenant in possession cannot claim title by limitations unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely. *Phillipson v. Flynn*, 83 Tex. 580, 19 S.W. 136, 138 (1892). In this respect, the notice of adverse possession must be brought home to the cotenants not in possession, either by information to that effect given by the cotenant in possession, or by acts of unequivocal notoriety in the assertion of the adverse and hostile claim so that the nonpossessory cotenants, as reasonable people, will be presumed to have notice of the adverse claim. *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex.1963). Thus, the key to commencement of the running of the statutes of limitation is notice of the adverse *claim* to the nonpossessory cotenants, which must be established by clear and unequivocal evidence, *Garrett v. Downs*, 377 S.W.2d 113, 116 (Tex.Civ.App.–Dallas 1964, no writ), calculated to give the nonpossessory cotenants notice.

In reading appellant's affidavit, we find no such assertion of unequivocal notoriety of adverse claim which would put his cotenants on notice that he was claiming title adverse to them. Defendant merely asserts that over a period of thirty–four years he had used the property, improved the property by fencing, by sodding and by digging a stock pond, and paid the taxes on the property and received the proceeds from the sale of cattle raised on the property. Additionally he states that he claimed it as his exclusive property, but he does not state that he communicated his adverse claim to anyone, not to mention his cotenants. We hold that these acts are not inconsistent with the existence of common title and cannot be acts that give cotenants

constructive notice of adverse possession. *Poenisch v. Quarnstrom*, 361 S.W.2d 367, 369 (Tex.1962); *Southern Pine Lumber Co. v. Hart*, 161 Tex. 357, 340 S.W.2d 775, 782 (1960); *Sweeten v. Park*, 154 Tex. 266, 276 S.W.2d 794 (1955). Consequently, these acts coupled with long possession did not "bring home" to his cotenants that he had repudiated their title and that he was holding adversely to it. *Green v. Vance*, 311 S.W.2d 738, 740 (Tex.Civ.App.–Houston) *writ ref'd n. r. e. per curiam, Green v. Vance*, 158 Tex. 550, 314 S.W.2d 794, 795 (1958).

The rule with respect to adverse possession, as Justice Norvell noted in *Todd v. Bruner, supra* at 160, quoting from Chief Justice Hemphill in *Alexander v. Kennedy*, 19 Tex. 488 (1857) is:

> That the possession of one co–heir or co–tenant is the possession of the other co–heirs, and is taken in trust for their benefit, is an elementary and undisputable principle of law. But this possession may become adverse to the other heirs, by acts or declarations repelling the presumption that the possession is in the character of a co–heir, and which show clearly a claim of exclusive right. One tenant in common may disseize or hold adversely to another tenant in common; *but the hostile intent of the possession should be manifested by acts of a more unequivocal character than would be necessary in ordinary cases, where there is no privity of estate between the claimants to the property.* [Emphasis added.]

As in *Alexander v. Kennedy* and *Todd v. Bruner*, we have here a coheir and cotenant in possession, who holds the property in trust for his cotenants. As a trustee, the cotenant in possession has a high duty with respect to his *cestue que* trust. Under this analysis, a higher degree of repudiation of his nonpossessory cotenant's title is required than in ordinary adverse possession claims. Consequently, we hold that long term possession and use of the property, without more, fails to rise to the level of notice of repudiation so as to commence the running of the statute of limitations against his cotenants.

For example, in *Moore v. Knight*, 127 Tex. 610, 94 S.W.2d 1137, 1140 (Tex.Comm'n App.1936, opinion adopted), the court stated that a jury may infer that the long–continued possession coupled with a deed filed of record from the possessory cotenant's predecessor in title, purporting to convey the interest of the nonpossessory cotenant, was sufficient notice to commence running of limitations. Additionally, that court drew a distinction between cotenants not related by blood and those so related. In the former situation, the court noted that those, who by reason of family relationships, are more likely to oppose the claim of those who had inherited as strangers, than those related by blood. We conclude, therefore, that these two elements add the additional elements necessary to enable a jury to infer notice of adverse possession by a cotenant in possession.

Nevertheless, appellant argues that his possession is controlled by *Mills v. Vinson*, 342 S.W.2d 33 (Tex.Civ.App.–Texarkana 1960, writ ref'd n. r. e.). In that case, the Texarkana Court of Civil Appeals in a per curiam opinion held that there was evidence to support a jury finding that the acts of a co–tenant in possession over a long period of time was sufficient to place some three hundred or more cotenants on notice of the possessory cotenant's claim of title adverse to them. The facts in that case showed that the cotenant in possession had been in possession from 1898 until suit was filed in 1958 and that some, but not all nonpossessory cotenants were aware of the possessory cotenant's possession and use of the property. As to those nonpossessory cotenants who admitted that they knew that the possessory cotenant claimed the property as his own, that decision may have been correct. However, with respect to those numerous cotenants who had no such knowledge, that decision, in our view, is wrong because notice of the adverse claim was not "brought home" to them so as to commence the running of limitations against their record title. Hence, we expressly disagree with that decision because the possessory cotenant's claim of title against his cotenants with no knowledge of his adverse claim is not suffi-

cient to give notice of his adverse claim as to these cotenants so as to activate the running of either statute of limitations. Consequently, we do not regard *Mills v. Vinson* as authority to hold that long, uninterrupted possession alone by a cotenant is sufficient to place his nonpossessory cotenants on notice of his claim adverse to their title, which is essential to the commencement of a limitation period. Accordingly, the judgment is affirmed.