# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00393-CV

**Sandra Amezquita, David Flores, and Christopher Flores, Appellants**

**v.**

**Chuck Fisher, Tom Fisher, Jayne Ulreich, Rick Fisher, Jake Fisher, Jordan Fisher, Margot Guerrero, James Evans, Maureen Leos, Michael Leos, Marty Leos, Matt Leos, Marshall Leos, Melanie Leos, Patricia Flores, Lorie Flores Sanchez, Roland Flores, and Larry Flores III, Appellees**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-001572,
### THE HONORABLE DANIELLA DESETA LYTTLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Special rules of proof apply when a cotenant of a tract asserts adverse possession against a fellow cotenant. The rules require proof of both "ouster—unequivocal, unmistakable, and hostile acts the possessor took to disseize other cotenants," *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011)—and that the defendant was put on notice of the ouster, with the notice itself required to be clear, unequivocal, and unmistakable, *see Todd v. Bruner*, 365 S.W.2d 155, 159–60 (Tex. 1963). Because the appellants here adduced no evidence sufficient to show ouster of and notice to the cotenant appellees, the trial court was correct to take the case from the jury and grant a directed verdict. We affirm.

# I

The underlying suit concerns ownership of the Austin land and improvements, primarily a home, known as 1008 East 8th Street. In the 1950s and early '60s, the property belonged to Virginia Flores. Virginia[1] lived in the home along with her parents and her four children, two of whom were Jesse Flores and Larry Flores Jr. When Jesse married in 1959, his wife moved into the home. The couple's three children grew up living in the home as well.

In 1966, ownership of the property was transferred to Lois Thrasher via foreclosure on a lien. In 1970, Thrasher deeded the property to Joe Leos Sr. and Janie Cruz. Cruz was one of Virginia's sisters, and Joe Leos Sr. was married to Virginia's other sister. Joe Leos Sr. died intestate in 1975, survived by his three children. In 1982, Cruz executed a deed to Virginia. The deed makes no mention of Joe Leos Sr. or his interest in the property, and the appellants here contend that the deed purported to convey the entirety of the property to Virginia. From the 1982 deed onward, only Virginia and Jesse lived in the home on the property.

In 1994, Virginia died intestate, survived both by Jesse and by the heirs of Larry Jr., who predeceased her. From Virginia's death onward, only Jesse lived in the home on the property. That remained true until 2016, when Jesse moved to a nursing home, where he continued to live until he died in 2020, leaving a will.[2] As part of the probate of the will and settling of his estate, a conveyance of the property—exactly what was conveyed, the parties dispute—was made to

---

[1] We refer to some of the relevant individuals by their given names to reduce confusion because some of them share surnames.

[2] It is undisputed that the home has been unoccupied and boarded up since 2016.

Jesse's surviving three children. Those three are the plaintiffs in this suit, Sandra Amezquita, David Flores, and Chris Flores (collectively, Amezquita).[3]

When Amezquita sought to sell the property, the title-examination process gave rise to two questions that led Amezquita to file this suit. On one hand, the title company asked about Joe Leos Sr.'s interest in the property after his 1975 death. His three immediate heirs, according to the relevant set of appellees here, have since died, one in 2013, one in 2018, and the last in 2021. Each of the three immediate heirs was survived by descendants, all of whom claim an interest in the property ultimately through Joe Leos Sr. Those subsequent heirs, defendants below and appellees before us, are the "Leos Defendants."

There is a second group of defendant–appellees. When Virginia died intestate, she was survived by Jesse and by the heirs of her son Larry Jr. His four heirs all claim an interest in the property, through him and thus through Virginia. Larry Jr.'s heirs are the "Flores Defendants."

Amezquita sued the Leos Defendants and Flores Defendants. She alleged that their claims of interest were invalid clouds on title because of the operation of the adverse-possession limitations periods of Civil Practice and Remedies Code sections 16.026, 16.027, 16.028, and 16.029. As relief for the suit, she sought a judgment declaring that each defendant group's claims are invalid and unenforceable, ordering the claims removed from the property's title, and "quieting title in the plaintiff and her brothers."[4] She also sought attorneys' fees.

---

[3] The brothers granted their sister the power of attorney to act on their behalf in the suit and were made plaintiffs at the pre-trial hearing, without objection.

[4] We do not decide whether the claims in this suit are claims in trespass to try title or quiet-title claims. *See Brumley v. McDuff*, 616 S.W.3d 826, 831–36 & n.46 (Tex. 2021) (citing and applying "nuanced" rules that distinguish the two kinds of claims); *accord Faith P. & Charles L. Bybee Found. v. Knutzen*, 681 S.W.3d 818, 826–29 (Tex. App.—Austin 2023, no pet.) (deciding whether claims were of one kind or the other). No one asks us to decide this issue, *see* Tex. R. App. P. 47.1, and in general, there can be "harsh" consequences when a plaintiff must

At trial, Amezquita sought to prove a period of adverse possession against the interests of the Leos Defendants from Virginia's 1982 acquisition of an interest in the property to Jesse's leaving the property for the nursing home in 2016. By contrast, because the Flores Defendants claim title through Virginia just like Amezquita does, Amezquita sought to prove a period of adverse possession against the interests of the Flores Defendants from Virginia's death in 1994, when Jesse alone became the sole inhabitant of the property, to 2016.

After Amezquita rested her case, the Leos Defendants and Flores Defendants moved for a directed verdict. After arguments by the parties, the court granted the motions and released the jury. The court issued a directed-verdict order, which recites:

> After considering the evidence and arguments of counsel, the Court FINDS that Section 16.0265 . . . applies to this adverse possession case involving cotenant heirs, and that the evidence, at the conclusion of Plaintiffs' case, shows that Plaintiffs have not satisfied the statutory requirements as set forth in subsection (c) of Section 16.0265.
>
> The Court FURTHER FINDS that the evidence, as it stands at the conclusion of Plaintiffs' case, is such that no other verdict can be reached and the moving parties are entitled to judgment as a matter of law.

The court also rendered its written final judgment. The judgment recites:

> At the conclusion of Plaintiff[s'] case in chief, the Defendants moved for a directed verdict. The Court, having considered the motion, GRANTED it and rendered judgment as a matter of law . . . . The Court rendered judgment for the reason that the Plaintiffs, in order to establish adverse possession of the Property, had to prove that they adhered to the requirements contained in Texas Civil Practice and Remedies Code §16.0265, and that the Plaintiffs presented no evidence that they

_____

take nothing on a claim in trespass to try title, *see, e.g.*, *Hejl v. Wirth*, 343 S.W.2d 226, 226 (Tex. 1961).

4

complied with the dictates of [Section 16.0265(c)]. Therefore, all of the Plaintiff[s'] claims fail as a matter of law.

Amezquita now appeals the take-nothing judgment rendered against her.

## II

In a sole appellate issue, Amezquita contends that the trial court erred by granting the Leos Defendants' and the Flores Defendants' motions for a directed verdict. Her appellate briefing addresses all the grounds that the defendants raised. Among those grounds was that Amezquita had adduced no evidence sufficient to make the required showings of cotenant ouster and the requisite notice to the defendants.

We agree that there was no such evidence. We first set forth the relevant standards for reviewing directed verdicts then the applicable law of cotenant ouster and notice. Finally, we consider the items of evidence that Amezquita points to.

### A

A directed verdict takes the case from the jury, a step that a trial court may take when no evidence warrants submission to the jury. *See Democracy Coal. v. City of Austin*, 141 S.W.3d 282, 288 (Tex. App.—Austin 2004, no pet.); *Valero Eastex Pipeline Co. v. Jarvis*, 926 S.W.2d 789, 792 (Tex. App.—Tyler 1996, writ denied), *cited with approval in Overlook at Lewis Mountain Cmty., Inc. v. Speer*, No. 03-25-00046-CV, 2025 WL 3768307, at *4 (Tex. App.—Austin Dec. 31, 2025, no pet. h.) (mem. op.); *Bingham v. Kimbrell*, 285 S.W.2d 312, 313 (Tex. App.—Austin 1955, writ ref'd n.r.e.). When the evidence raises no fact issues to be submitted, the trial court, even *sua sponte*, may direct the verdict and render judgment as a matter of law. *See In re Estate of Price*, 375 S.W.2d 900, 904 (Tex. 1964), *overruled on other grounds by Stiles*

*v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *Garner v. McGinty*, 771 S.W.2d 242, 243 (Tex. App.—Austin 1989, no writ); *see also Valero Eastex Pipeline*, 926 S.W.2d at 792 (describing grant of directed verdict in these circumstances as trial courts' "duty").

A judgment on a directed verdict may be affirmed even when the only grounds that the trial court gave as its reasons are themselves erroneous. *See Pawlik v. Continental Props., Inc.*, No. 03-19-00831-CV, 2021 WL 2964265, at *4 n.2 (Tex. App.—Austin July 15, 2021, no pet.) (mem. op.); *Democracy Coal.*, 141 S.W.3d at 288–89. We may affirm on any theory that would support a directed verdict. *Democracy Coal.*, 141 S.W.3d at 289–90. Plus, although the sole Rule of Civil Procedure to address directed verdicts, Rule 268,[5] requires the motion to "state the specific grounds therefor," when the trial court grants the motion, its decision is not reversible error "for the sole reason that the motion failed to state the specific grounds upon which the order was based" because "[i]f there are no fact issues raised by the evidence to be submitted to the jury the court can, of its own volition, instruct a verdict for one of the parties." *Estate of Price*, 375 S.W.2d at 904; *accord Texas Emps. Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977); *Democracy Coal.*, 141 S.W.3d at 288. When a directed-verdict motion sets forth more than one ground, the appellant must show that all grounds are unsupportable to be entitled to reversal. *See McKelvy v. Barber*, 381 S.W.2d 59, 61–62 (Tex. 1964).

Review here of the trial court's directed verdict is for the legal sufficiency of the evidence. *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022). We examine the evidence in the light most favorable to the party who suffered the adverse judgment, crediting the

---

[5] "Directed verdict" and "instructed verdict," as used in the title of Rule 268, are synonymous. *Hart v. City of Austin*, No. 03-99-00216-CV, 2000 WL 1228633, at *1 n.2 (Tex. App.—Austin Aug. 31, 2000, no pet.) (not designated for publication).

party's position with all reasonable inferences and disregarding evidence and inferences to the contrary, and decide whether there is any evidence of probative value to raise an issue of material fact on the relevant proposition. *See id.*; *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to make the finding at issue. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A trial court properly grants a directed verdict when no evidence supports a vital fact, the evidence fails to state a claim as a matter of law, only the legal effect of evidence is involved, or when no verdict other than the one requested could properly be sustained. *See City of Baytown*, 645 S.W.3d at 178; *Navarro v. Collora*, 566 S.W.2d 304, 306 (Tex. App.—Corpus Christi–Edinburg 1978), *rev'd on other grounds*, 574 S.W.2d 65, 68 (Tex. 1978) (stating that court of appeals applied proper standard of review regarding directed verdicts).

**B**

Amezquita needed to adduce evidence sufficient to comply with the special rules of cotenant ouster and requisite notice. A cotenancy exists when multiple people share the unity of exclusive use and possession of property held in common.[6] *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991).

Cotenancy aside for the moment, for the usual plaintiff to prove adverse possession, the plaintiff must prove "an actual and visible appropriation of real property, commenced and

---

[6] The types of cotenancy include joint tenancies and tenancies in common. *Ayala v. Zak Cap., LLC*, No. 02-25-00157-CV, 2025 WL 2423504, at *5 (Tex. App.—Fort Worth Aug. 21, 2015, no pet.) (mem. op.); *Wagenschein v. Ehlinger*, 581 S.W.3d 851, 857 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied); *Caldwell v. Farrier*, 248 S.W. 425, 427 (Tex. App.—San Antonio 1923, no writ); *see Holmes v. Beatty*, 290 S.W.3d 852, 857–58 (Tex. 2009) (contrasting joint tenancies and tenancies in common).

continued under a claim of right that is inconsistent with and is hostile to the claim of another." *See BP Am. Prod.*, 342 S.W.3d at 69 (quoting Tex. Civ. Prac. & Rem. Code § 16.021(1)). This standard "requires visible appropriation; mistaken beliefs about ownership do not transfer title until someone acts on them." *Id.* The standard also requires that the "possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant." *Id.* at 70 (first emphasis in original, second added) (quoting *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990)); *see also id.* at 71 ("The test for establishing adverse possession, both between strangers and cotenants, is whether the acts unmistakably assert a claim of 'exclusive ownership' by the occupant."). Inferences "are never indulged in favor of the" adverse-possession claimant. *Haby v. Howard*, 757 S.W.2d 34, 37 (Tex. App.—San Antonio 1988, writ denied) (citing *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985)).

What is needed to show an unmistakable claim of exclusive ownership against a cotenant is usually much more than what is needed to make the same showing against a non-cotenant. The cotenant plaintiff must prove ouster and the requisite notice. *See BP Am. Prod.*, 342 S.W.3d at 70 ("Wagner had to show unmistakable and hostile acts that would put other cotenants on notice of its intent to oust them from the leasehold."). Ouster requires "unequivocal, unmistakable, and hostile acts the possessor took to disseize other cotenants." *Id.*; *see also, e.g.*, *Rife v. Kerr*, 513 S.W.3d 601, 617–18 (Tex. App.—San Antonio 2016, pet. denied) (when land held in cotenancy was originally platted to be subdivided and subdivided plats were to be sold to different buyers, parties adduced some evidence of ouster of cotenants because parties adduced affidavit testimony showing that parties' predecessors-in-interest had fenced off the land and used it themselves for livestock grazing, hunting, camping, and building and maintaining structures).

8

The special rule of ouster exists because of the nature of cotenancy interests: "Cotenants must surmount a more stringent requirement because acts of ownership 'which, if done by a stranger, would per se be a disseizin' are not necessarily such when cotenants share an undivided interest." *BP Am. Prod.*, 342 S.W.3d at 70 (quoting *Todd*, 365 S.W.2d at 160); *see also Todd*, 365 S.W.2d at 159 ("[T]here is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession."). After all, "cotenants have rights to ownership and use of the property a stranger would not have." *BP Am. Prod.*, 342 S.W.3d at 70.

The cotenant plaintiff also must prove that the acts of ouster put the cotenant defendant on notice of the plaintiff's repudiation of the cotenancy. *See Todd*, 365 S.W.2d at 156, 157, 159–60. The notice must be of "unequivocal notoriety" and must show a repudiation of the cotenancy relationship in a way that is "brought home to" the defendant. *See id.* at 159. The relevant acts and circumstances must "repel[] the presumption" of possession as a cotenant and "show clearly a claim of *exclusive* right." *See id.* at 160 (emphasis added) (quoting *Alexander v. Kennedy*, 19 Tex. 488, 492 (1857)).

Because "[a]ny cotenant has a right to be in the possession of property in which he owns an interest," if the relevant acts and circumstances offered to show adverse possession "are susceptible of explanation consistent with the existence of the common title," then they "cannot be such as to give constructive notice to the cotenants out of possession." *See id.* Both the requisite notice and ouster must be in place for the limitations period to begin to run. *See id.* at 157, 159–61; *Republic Prod. Co. v. Lee*, 121 S.W.2d 973, 978 (Tex. [Comm'n Op.] 1938); *Lane v. First*

9

*Nat'l Bank of Temple*, No. 03-97-00547-CV 1998 WL 785310, at *3 (Tex. App.—Austin Nov. 13, 1998, pet. denied) (not designated for publication).[7]

*C*

The Leos Defendants' and Flores Defendants' motions for directed verdict invoked the special rules of ouster and requisite notice, challenging whether Amezquita had adduced legally sufficient evidence to support findings in her favor on those issues. On appeal, Amezquita points to three items from her evidence that she believes suffice to show cotenant ouster and notice.

---

[7] With the stringent rules for cotenant adverse possession as a backdrop, the legislature in 2017 enacted Civil Practice and Remedies Code section 16.0265. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 742, §§ 1–2, 2017 Tex. Gen. Laws 3162, 3162–64. The statute applies only among the class of owners falling within the statute's definition of "cotenant heirs." *See* Tex. Civ. Prac. & Rem. Code § 16.0265. The author of the 2017 bill explained that the new statute was needed because of the difficulty of proving cotenant adverse possession:

> Property that informally passes from one generation to another, absent a will or other formal means of conveyance, is sometimes referred to as "heirship property." This informal transfer of possession of real property can cause hardships for property owners, particularly when the property is encumbered by multiple cotenant interests. Interested parties are concerned that heirship property owners are unable to secure resources to improve or sell their property because proof of title in fee simple is required to complete such a transaction.

> While existing adverse possession statutes provide a mechanism for individuals to obtain title in fee simple under certain circumstances, that mechanism cannot be used with respect to heirship property due to the requirement that adverse possession be to the exclusion of other cotenant heirs. Interested parties explain that this situation prohibits cotenant heirs, who obtain ownership through the rules of intestate succession, from utilizing existing adverse possession statutes to obtain title in fee simple.

Senate Rsch. Ctr., Bill Analysis, Tex. S.B. 1249, 87th Leg., R.S. (2017). Amezquita expressly disclaims any reliance on Section 16.0265, including specifically rejecting that the parties here are "cotenant heirs" under the statutory definition, and explains that she asserted adverse possession under only Civil Practice and Remedies Code sections 16.026, 16.027, 16.028, and 16.029.

10

Her first item of evidence concerns only the Leos Defendants. She points to the recording of the 1982 deed from Cruz to Virginia, arguing that it amounts to notice of a repudiation of the cotenancy because the deed purports to convey the entire common property to someone who was then a stranger to the cotenancy, Virginia.[8] We first note that such a deed recording is not, without more, evidence of ouster and notice—it must be "followed by actual adverse possession" to "amount[] to a disseizin of the non-participating cotenant." *See Republic Prod.*, 121 S.W.2d at 978; *Rife*, 513 S.W.3d at 617.

Another hurdle for Amezquita is that "a deed puts co-tenants on constructive notice of an adverse claim only if it is on record before they acquire their interests"—"[t]he recordation of a deed after the other co-tenants have already acquired their property interests does not put those co-tenants on constructive notice that their co-tenant claimed an adverse interest." *See Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.—Houston [1st Dist.] 2010, no pet.). This rule distinguishes between the defendant and the defendant's predecessors-in-interest. When the plaintiff, to prevail against the defendant, must establish ouster of and notice to the defendant's predecessor, the deed must have been recorded before *the predecessor* took title. *See id.*

Although the recording of the 1982 deed might precede the Leos Defendants' title ownership, the recording did not precede the title ownership of the Leos Defendants' predecessors-in-interest, who were the immediate heirs of Joe Leos Sr. Those immediate heirs took title upon Joe Leos Sr.'s death in 1975, and the present Leos Defendants did not take title from the immediate heirs until 2013 at the earliest. Therefore, the recording of the 1982 deed is no evidence of adverse possession as against Joe Leos Sr.'s immediate heirs. *See id.* And the

---

[8] The recording of the 1982 deed is no evidence of ouster and notice against the Flores Defendants because they claim title through Virginia just as much as Amezquita does.

recording could be evidence against the Leos Defendants only at the earliest beginning in 2013—because of the distinction between proof of adverse possession against the defendant and proof of adverse possession against the defendant's predecessor—and only so long as there was "actual adverse possession" from that time onward. *See Republic Prod.*, 121 S.W.2d at 978. The recording of the 1982 deed, by itself, thus is not legally sufficient evidence of ouster and notice.

We turn now to the purported evidence of actual adverse possession that Amezquita points to. She relies primarily on the facts that from 1982 to 1994, only Virginia and Jesse lived in the home and that from Virginia's 1994 death to Jesse's 2016 move to a nursing home, Jesse alone lived in the home. But as a matter of law, cotenants' possession of, and living on, property is fully consistent with the cotenancy and thus is no evidence, without more, of ouster and notice. *See Todd*, 365 S.W.2d at 160 ("Possession, coupled with payment of taxes, is not notice to a cotenant of a repudiation of the common title."); *Poenisch v. Quarnstrom*, 361 S.W.2d 367, 369 (Tex. 1962) ("The possession of a co-tenant . . . will be presumed to be in right of the common title. . . . Possession and payment of taxes on the property do not constitute the assertion of an adverse right. There must be something more." (quoting *Phillipson v. Flynn*, 19 S.W. 136, 138 (Tex. 1892))); *Lane*, 1998 WL 785310, at *4 ("While W.B. and his heirs had paid the taxes, executed leases, collected rents, and maintained the property since 1964, such acts are not necessarily hostile to a cotenancy relationship and many times are within the purview of normal, beneficial use of the land by a cotenant."); *Horrocks v. Horrocks*, 608 S.W.2d 733, 736 (Tex. App.—Dallas 1980, no writ) (concluding that affidavit testimony did not raise genuine issue of material fact to survive summary judgment against cotenant adverse-possession claimant despite claimant's long-continued use of property at issue—affidavit lacked any "assertion of unequivocal notoriety of adverse claim which would put his cotenants on notice that he was claiming title

12

adverse to them"; assertion that claimant "over a period of thirty-four years . . . had used the property, improved the property by fencing, by sodding and by digging a stock pond, and paid the taxes on the property and received the proceeds from the sale of cattle raised on the property" was insufficient; and claimant's claim of exclusive ownership was not communicated to anyone).

Amezquita also relies on evidence tending to show that before this suit, neither the Leos Defendants nor the Flores Defendants asserted any claim to the property. Yet this is no evidence of the required ouster and notice either because those matters must be proven by reference to acts of the plaintiffs or their predecessors-in-interest, not to the defendants' acts. *See BP Am. Prod.*, 342 S.W.3d at 70 (proof of ouster requires proof of acts "*that the possessor took* to disseize other cotenants" (emphasis added)); *Davis v. Carriker*, 536 S.W.2d 246, 250 (Tex. App.—Amarillo 1976, writ ref'd n.r.e.) ("[I]t is well recognized that adverse possession must be established by the strength of Carriker's title and not by any weakness in Davis' claim of title."). Moreover, the defendants' silence here is consistent with continuing to recognize the cotenancy; therefore, their silence is no evidence that any repudiation of the cotenancy was "brought home" to them. The explanation by the Supreme Court in *Todd* is illustrative:

> It is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. Cotenancy is a common form of land tenure when owners belong to the same family. This results largely by the operation of the statute of descent and distribution and commonly followed customs and practices relating to the making of devises of lands. . . . The statutes of limitation are statutes of repose. They are intended to settle and support land titles and are not designed to afford a method whereby one member of a family may appropriate property belonging to his kinsman. Hence the legal requirement that notice of repudiation of the common title should be clear, unequivocal and unmistakable. . . . The real property statutes of limitations as to cotenants are not designed to run in secrecy and silence.

*See* 365 S.W.2d at 159–60.

13

Amezquita argues that the combination of the evidence of Virginia's and Jesse's living on the property and the evidence that the defendants did not claim an interest in the property constitutes some evidence of the requisite ouster and notice. As support, she relies on statements from Texas cases that describe the type of "long-continued possession" that when coupled with "nonassertion of claim by the titleholder" can give rise to an inference of notice. However, these cases confirm that a long-continuing possessor still must claim an ownership, and exercise a possession, that *excludes* the cotenant's interest. *See Tex–Wis Co. v. Johnson*, 534 S.W.2d 895, 899–902 (Tex. 1976); *see also Gulley v. Davis*, 321 S.W.3d 213, 221 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (similarly emphasizing word "exclusive" when explaining *Tex–Wis*); *Horrocks*, 608 S.W.2d at 736.[9] Long-continued possession is not an alternative to showing possession that excludes others and a claim of ownership that excludes others; it is an alternative to the rule from some older cases that adverse possessors must show a change in the character of their possession of the property in order to establish notice of repudiation. *See Tex–Wis*, 534 S.W.2d at 901 (comparing *Mauritz v. Thatcher*, 140 S.W.2d 303, 304 (Tex. App.—Galveston 1940, writ ref'd), to *Sweeten v. Park*, 276 S.W.2d 794 (Tex. 1955)); *Villarreal v. Chesapeake Zapata, L.P.*, No. 04-08-00171-CV, 2009 WL 1956387, at *6 n.1 (Tex. App.—San Antonio

---

[9] The Court in *Tex–Wis* in one place described the rule this way:

> Such notice [of repudiation of the cotenancy title] may be constructive and will be presumed to have been brought home to the cotenant or owner when the *adverse occupancy and claim of title* to the property is so long-continued, open, notorious, *exclusive and inconsistent with the existence of title in others*, except the occupant, that the law will raise the inference of notice to the co-tenant.

*Tex–Wis Co. v. Johnson*, 534 S.W.2d 895, 899, 901, 902 (Tex. 1976) (emphases added) (quoting *Mauritz v. Thatcher*, 140 S.W.2d 303, 304 (Tex. App.—Galveston 1940, writ ref'd)).

14

July 8, 2009, pet. denied) (mem. op.) (recognizing that *Tex–Wis* rule of long-continued use "is a separate ground on which to base an adverse possession claim from change in the use or character of possession"). As we have said, mere possession of the property, as with Virginia's and Jesse's simply living on the property, is fully consistent with a cotenancy title in others.

\*     \*     \*

Our analysis has disposed of all items of evidence to which Amezquita points on appeal as possibly legally sufficient to show cotenant ouster and notice. These items, individually and in aggregate, were legally insufficient to show ouster and notice. We thus overrule Amezquita's sole appellate issue and affirm the trial court's directed verdict.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   June 4, 2026